Mark S. Bostick (Bar No. 111241)
Tracy Green (Bar No. 114876)
Lisa Lenherr (Bar No. 258091)
**WENDEL ROSEN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@wendel.com
Email: tgreen@wendel.com
Email: llenherr@wendel.com
Attorneys for Lois I. Brady, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>FAIRN & SWANSON, INC.<br><br>Debtor. | Case No. 20-40990-RLE<br><br>Chapter 7<br><br>**MOTION OF CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER: 1) APPROVING CASH COLLATERAL STIPULATION PURSUANT TO 11 U.S.C. 363(b); AND 2) AUTHORIZING TRUSTEE TO INCUR AND PAY CERTAIN ADMINISTRATIVE EXPENSES**<br><br>Date: TBD<br>Time: TBD<br>Place: By video<br>Judge: The Honorable Roger L. Efremsky |

LOIS I. BRADY, Chapter 7 Trustee ("Trustee") moves this Court for an order 1) approving cash collateral stipulation pursuant to 11 U.S.C. §§ 361, 363, 503, and 507; rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure; rules 2002-1 and 9014-1 of the Bankruptcy Local Rules ("BLR"); and the United States Bankruptcy Court for the Northern District of California's Guidelines for Cash Collateral & Financing Motions & Stipulations (the "Guidelines"); and 2) authorizing Trustee to incur and pay certain administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A), as follows:

## I. INTRODUCTORY STATEMENT[1]

**The purposes for the use of the cash collateral**. Fairn & Swanson, Inc. ("Debtor") owns and operated ten (10) duty-free border stores in Texas, California, and Arizona.[2] (Decl. Brady ¶ 3[3]; *see also* Docket No. 1, p. 5, filed June 2, 2020 (list of locations).) In addition to the border stores, it maintains three (3) wholesale bonded warehouses and two (2) bonded distribution warehouses in Washington, California, and Florida. (Decl. Brady ¶ 3.) In addition to the foregoing, Debtor maintained an office in San Ysidro, California. (Decl. Brady ¶ 3.) Debtor estimates the inventory at these locations exceeds $39 million. (Docket No. 1, p. 13, filed June 2, 2020.) Trustee is informed that all inventory is bonded and strictly controlled by United States Customs. (Decl. Brady ¶ 4.)

Wells Fargo Bank, National Association ("Lender") asserts that the cash in Debtor's Wells Fargo Bank accounts on the Petition Date, and any amounts deposited post-Petition as the proceeds of Lender's Pre-Petition Collateral (defined in the Stipulation), is cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral").

Trustee requires the use of the Cash Collateral to pay the costs of preserving and liquidating the estate's assets for payment, among other things, of the balance of the Loan (defined in the Stipulation). (Decl. Brady ¶ 6.) In addition to administrative rent, warehouse expenses, security, insurance, utilities, and other necessary expenses as described in more detail below in § V and in the Budget (defined below), Trustee needs to retain (as non-professionals) two (2) former employees of the Debtor to assist her with her duties (as more fulling described below), and possibly additional workers to facilitate the sale of estate assets. (Decl. Brady ¶ 6.) The proposed uses of cash collateral are appropriate post-Petition section 503(b) administrative expenses. (Decl. Brady ¶ 6.)

**The terms, including duration, of the use of the cash collateral**.

Lender consents to the use of Cash Collateral through **July 31, 2020**, pursuant to the terms

---

[1] This Introductory Statement is provided in compliance with the Guidelines.
[2] The Arizona store never opened.
[3] All references to the Declaration of Lois I. Brady shall be referred to as (Decl. Brady ¶ ___).

of the cash collateral stipulation filed contemporaneously herewith (the "Stipulation"). A copy of the Stipulation is attached as **Exhibit 1.** In addition to the expiration date, termination events ("**Termination Events**") include: failure to comply with the terms of the Stipulation; the filing of a 11 U.S.C. § 363 sale motion on terms unacceptable to Lender; failure to file a 11 U.S.C. § 363 sale motion on or before July 10, 2020; the filing of a motion to incur debt under 11 U.S.C. § 364 from a party other than Lender; dismissal of the case; and commencement of a proceeding objecting to or challenging Lender Claim.

On the occurrence of a Termination Event, Trustee's authorization to use Cash Collateral will automatically end and Trustee shall be prohibited from using Cash Collateral for any purpose other than for specific amounts identified in paragraph 6(b) of the Stipulation. The Stipulation may be extended by agreement of the parties in-writing without further Court order. If Lender for whatever reason refuses to extend the agreement, Trustee must seek Bankruptcy Court approval for any further use of Cash Collateral.

**Allowance of Lender Claim**. The Stipulation requires Lender to file its claim within seven (7) days of entry of the Order and provides timeframes for Trustee to object to Lender Claim or any amendments or post-Petition amounts added to the Lender Claim. If no objection is filed, Lender Claim will become anallowed claim under 11 U.S.C. § 502(a) secured by valid, perfected and first priority liens on the Pre-Petition Collateral

**Carveouts**. The Stipulation provides **carveouts** for the Trustee and her professionals.

**Adequate protection**. Lender has an estimated $20 million **equity cushion**. In addition, Lender will be provided with **Replacement Liens** (defined below).

**Proposed Form of Order**. A proposed form of order its attached as **Exhibit 2.**

**Request for Authority to Incur and Make Administrative Payments.** In coordination with the request to use Cash Collateral, Trustee requests authority to incur and pay the Administrative Expenses detailed in the cash collateral Budget (defined below).

**Certification**

The undersigned Certifying Professional has read the accompanying motion or stipulation and the Cash Collateral - Post Petition Financing Introductory Statement; to the best of my

knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion or stipulation are inconformity with the Court's Guidelines For Cash Collateral And Financing Motions and Stipulations except as set forth above. I understand and have advised the trustee that the court may grant appropriate relief under rule 9024 of the Federal Rules of Bankruptcy Procedure if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statement.

## II. JURISDICTION

The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.) and BLR 5011-1(a) of the Local Bankruptcy. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## III. FACTUAL BACKGROUND

1. On November 10, 2017, Lender and Debtor entered into that certain Credit Agreement (the "**Credit Agreement**") where Lender agreed to extend Debtor a line of credit not to exceed $32,000,000.00 (the "**Loan**"). (Stipulation, Ex. A.)

2. In order to insure repayment of the Loan, Debtor executed that certain Guaranty and Security Agreement dated November 10, 2017 (the "**Security Agreement**") which granted Lender a security interest in certain collateral (as more particularly described in section 3 of the Security Agreement) (the "**Pre-Petition Collateral**"). (Stipulation, Ex. B.)

3. Evidence of Lender's security interests are described as "[a]ll assets of Debtor, whether now or existing hereafter acquired" by that certain UCC-1 Financing Statement filed as Document No. 17-7608906670 on October 3, 2017, with the California Secretary of State (the "**UCC-1**"). (Stipulation, Ex. C.)

4. On May 15, 2018, the parties entered into a First Amendment to Credit Agreement and Waiver of Defaults (the "**First Amendment**"). (Stipulation, Ex. D.)

5. On July 10, 2018, the parties entered into a Second Amendment to Credit Agreement (the "**Second Amendment**"). (Stipulation, Ex. E.)

6. On February 18, 2020, the parties entered into a Third Amendment to Credit Agreement (the "**Third Amendment**"). (Stipulation, Ex. F.)

7. On June 2, 2020 (the "**Petition Date**"), Debtor filed a voluntary petition (the "**Petition**") under Chapter 7 of the United States Bankruptcy Code.[4] (Docket No. 1.) Lois I. Brady is the duly appointed Chapter 7 Trustee in this case.

8. According to Debtor, on the Petition Date its assets had a value of $42,939,730.22. (Docket No. 1, p. 6, filed June 2, 2020 (Schedules).)

9. According to Debtor, on the Petition Date, Lender held a secured claim in the amount of 19,052,398.23. (Docket No. 1, p. 23, filed June 2, 2020.)

10. Lender asserts that the cash in Debtor's Wells Fargo Bank accounts on the Petition Date, and any amounts deposited post-Petition as the proceeds of Lender's Pre-Petition Collateral, is cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

## IV. REQUEST FOR APPROVAL OF CASH COLLATERAL STIPULATION

Trustee requires the use of the Cash Collateral to preserve and liquidate the estate for payment, among other things, of the balance of the Loan; in order to accomplish these tasks, Lender has agreed to permit Trustee, pursuant to the terms of the Stipulation, to use its Cash Collateral. Trustee's use of property of its estate is governed by section 363 of the Bankruptcy Code which provides in pertinent part that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee may use "cash collateral" under subsection (c)(1) if:

(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale of lease in

---
[4] 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

### A.     Cash Collateral Budget

Paragraph 1 of the Stipulation provides that Lender consents to the use of Cash Collateral through **July 31, 2020**, in accordance with the budget (the "Budget") attached to the Stipulation as Exhibit G. For a more description of the items included in the Budget, *see infra* § V.

### B.     Term and Possible Extension

Paragraph 6 of the Stipulation provides that Lender consents to the use of Cash Collateral through **July 31, 2020**, unless extended by agreement of the parties in writing. In addition to the expiration date, termination events ("**Termination Events**") include: failure to comply with the terms of the Stipulation; the filing of a 11 U.S.C. § 363 sale motion on terms unacceptable to Lender; failure to file an 11 U.S.C. § 363 sale motion on or before July 10, 2020; the filing of a motion to incur debt under 11 U.S.C. § 364 from a party other than Lender; dismissal of the case; and commencement of a proceeding objecting to or challenging Lender Claim.

On the occurrence of a Termination Event, Trustee's authorization to use Cash Collateral will automatically end and Trustee shall be prohibited from using Cash Collateral for any purpose other than payment of budgeted expenses incurred prior to the Termination; payment of Professionals' Carveout amounts that were incurred prior to the Termination Event; and payment of Trustee's Carveout. The Stipulation may be extended by agreement of the parties in-writing without further Court order. If Lender for whatever reason refuses to extend the agreement, Trustee must seek Bankruptcy Court approval for any further use of Cash Collateral.

### C.     Adequate Protection

Section 363(e) of the Bankruptcy Code provides that:

> Notwithstanding any other provision of this section, at any time, on request of entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection to such interests.

11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code provides that adequate protection may be

provided, "requiring the trustee to make cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(1). In addition, an equity cushion[5] provides "adequate protection." *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) ("Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt . . ."). "In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection." *Id.* Trustee "has the burden of proof on the issue of adequate protection . . . ." 11 U.S.C. § 363(p)(1).

Adequate protection of Lender's interests is addressed in paragraph 2 of the Stipulation. It provides that the parties believe that Lender is adequately protected by its equity cushion which, according to the Debtor's Schedules, exceeds $20,000,000.00. In addition to the equity cushion, as adequate protection for Trustee's use of Cash Collateral, Lender shall have a replacement lien (the "Replacement Lien") in all post-Petition assets of the nature and type described in the Security Agreement and the proceeds thereafter acquired (the "Post-Petition Collateral"), to the same extent and priority as Lender's interests presently attach to the Collateral. Post-Petition Collateral excludes claims and proceeds arising under 11 U.S.C. §§ 544, 547, 548, 549, 550 and 553.

D.   Carveouts

1.   Professionals' Carveout

The Stipulation provides for a carveout for Trustee's professionals in paragraph 3(a). The liens of Lender shall be subject to the payment of the allowed fees and costs of Trustee's professionals as may be awarded to from time to time pursuant to Code § 330 (the "**Professionals' Carveout**"). The Professionals' Carveout is limited in amount to the lesser of (i) the aggregate amount provided in the Budget, plus any amount in a subsequent budget(s) agreed in writing by the parties, for such professional for the period commencing on the Petition Date and ending on

---

[5] An "equity cushion" is "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." *Mellor*, 734 F.2d at n. 2 (*citation omitted*).

the earliest occurrence of a Termination Event and (ii) the aggregate amount of allowed fees and expenses for such professional that actually accrues during the period commencing on the Petition Date and ending on the earliest occurrence of a Termination Event. The Professionals' Carveout shall, with respect to each professional, be reduced dollar-for-dollar by any payments of fees and expenses to such professional from sale proceeds of the Pre-Petition Collateral. No portion of the Professionals' Carveout may be used to pay any fees or expenses incurred in connection with claims or causes of action adverse to Lender's claim against Debtor or Lender's interests in the Pre-Petition Collateral, provided, however, that the Professionals' Carveout may be used to pay allowed fees and expenses incurred by the professionals in connection with the negotiation and preparation of the Stipulation, motion for approval of the Stipulation, and entry of order approving the Stipulation or any amendment hereto consented to by Lender.

## 2. Trustee's Carveout

The Stipulation provides for a carveout for Trustee in paragraph 3(b). It provides that the liens of Lender are be subject to the payment of the allowed amount of Trustee's fee under 11 U.S.C. § 326 that accrues through the Termination Date, up to the sum of $100,000.00. ("**Trustee's Carveout**").

Both the Professionals' Carveout and the Trustee's Carveout will be paid from Pre-Petition Collateral and Post-Petition Collateral proceeds before Lender's Claim, but neither Lender's Claim nor the extent of Lender's liens in the Pre-Petition Collateral or Post-Petition Collateral shall be reduced by the amount of the Professionals Carvout or Trustee's Carveout.

### E. Allowance of Lender's Claim

In paragraph 4 of the Stipulation, it provides that Lender will file its claim ("**Lender Claim**") within seven (7) days of entry of the Order approving the Stipulation. Trustee will have until July 31, 2020, to file an objection to the Lender Claim. In all events, the Trustee shall have three (3) weeks to object to (i) any amended claim filed by Lender, or (ii) any amounts that Lender asserts in writing to Trustee (with supporting detail) are allowable under 11 U.S.C. § 506(b). To the extent that Trustee does not timely file an objection to the Lender Claim, or any amendment thereto or related notice of 11 U.S.C. § 506(b) amounts, the Lender Claim (or, as applicable, 11

U.S.C. § 506(b) amounts) shall be an allowed claim under 11 U.S.C. § 502(a) secured by valid, perfected and first priority liens on the Pre-Petition Collateral.

## V. AUTHORITY TO INCUR AND PAY CERTAIN ADMINISTRATIVE EXPENSES

Trustee seeks authority to pay the costs of liquidating and preserving the estate that are identified in the Budget. Specifically, those costs, as agreed to by Lender, are (the "Administrative Expenses"):

1. Post-Petition Rent (16 leases).

2. Security for all locations

3. Insurance for all locations and all estate assets

4. Warehouse expenses

5. Utilities[6]

6. KIS IT Services, the cloud-based software used to track inventory and other critical data[7]

7. SAMCO Accounting Software[8]

8. Non-Professional Assistance and associated costs (including payroll taxes, payroll service or other):

   a. Albert Savedra: Trustee has determined that in order to effectively and efficiently liquidate the estate assets she needs the assistance of Debtor's former Chief Financial Officer, Albert Savedra. (Decl. Brady ¶ 7(a).) He will be retained to assist Trustee oversee security at the locations, assist on obtaining facts in connection with potential avoidance claims, assist on providing and interpreting company data, and assist in facilitating the sale of estate assets. (Decl. Brady ¶ 7(a).) Mr. Savedra has agreed to accept $225.00 per hour for these services, with a $5,000.00 advance (to be applied against time incurred). (Decl. Brady ¶ 7(a).) Mr. Savedra is not a professional with the meaning of 11 U.S.C. § 327.

   b. Richard New, Jr.: Trustee has determined that in order to effectively and efficiently liquidate the estate assets she needs the assistance of Debtor's former

---

[6] For more information on the utilities, see the *Trustee's Emergency Motion for Order (A) Prohibiting Utilities from Altering, Refusing, Or Discontinuing Services and (B) Determining Adequate Assurance of Payment for Future Utility Services*, filed contemporaneously herewith.
[7] For more information on this line item, see *Trustee's Motion for Approval to Pay Pre-Petition Debt to Critical Vendors (KIS Computer Center and SAMCO)*, filed contemporaneously herewith.
[8] For more information on this line item, see *Trustee's Motion for Approval to Pay Pre-Petition Debt to Critical Vendors (KIS Computer Center and SAMCO)*, filed contemporaneously herewith.

Regulatory Compliance Director, Richard New, Jr.. (Decl. Brady ¶ 7(b).) He will be retained on a limited basis to provide information related to customs compliance issues and respecting the Debtor's operating system, which he helped design. (Decl. Brady ¶ 7(b).) Mr. New has agreed to accept $150.00 per hour for his services. (Decl. Brady ¶ 7(b).) Mr. New is not a professional with the meaning of 11 U.S.C. § 327.

    c. <u>Other people as needed</u>. Trustee has determined that it may be necessary to retain individuals on an hourly basis to provide access to various properties to potential bidders as part of its sale process. (Decl. Brady ¶ 7(c).)

9. Other Misc. Expenses

Trustee seeks this relief pursuant to *Dreyfuss v. Cory (In re Cloobeck),* 788 F.3d 1243 (9th Cir. 2015) and 11 U.S.C. § 503(b)(1)(A). The expenses for which the Trustee seeks approval to pay are reasonable and necessary to ensure preservation and liquidation of the bankruptcy estate assets.

## VI. CONCLUSION

WHEREFORE, Trustee respectfully requests that this Court enter an order:

1. Granting the Motion;

2. Approving and Adopting the Stipulation in its entirety as the Order of this Court;

3. Finding the Stipulation was negotiated at arm's length and in good faith by the parties, and in the best interest of Debtor's estate and creditors;

4. Authorizing Trustee to incur and pay the Administrative Expenses (defined above);

5. Directing no stay shall apply to the effectiveness of the order; and

6. For such other and further relief as the Court deems just and proper.

DATED: June 26, 2020          WENDEL ROSEN LLP

By:     */s/ Lisa Lenherr*
      Mark S. Bostick
      Lisa Lenherr
      Attorneys for Lois I. Brady, Trustee