Mark S. Bostick (Bar No. 111241)
Elizabeth Berke-Dreyfuss (Bar No. 114651)
Lisa Lenherr (Bar No. 258091)
**WENDEL ROSEN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@wendel.com
Email: edreyfuss@wendel.com
Email: llenherr@wendel.com

Attorneys for Lois I. Brady, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>FAIRN & SWANSON, INC.,<br><br>　　　　　Debtor. | Case No. 20-40990-RLE<br><br>Chapter 7<br><br>**MOTION FOR ORDER [1] APPROVING PRE-SALE STIPULATION, [2] AUTHORIZING CHAPTER 7 TRUSTEE TO INCUR POST-PETITION DEBT ON AN EMERGENCY BASIS, [3] AUTHORIZING CHAPTER 7 TRUSTEE TO PAY DEPOSIT TO SECURE CUSTODIAL SURETY BOND AND [4] APPROVING SECURED PARTY'S CARVE-OUT TO THE ESTATE**<br><br>Date: 　　TBD<br>Time: 　　TBD<br>Place: 　By video<br>Judge: 　The Honorable Roger L. Efremsky |

LOIS I. BRADY, Chapter 7 Trustee ("**Trustee**"), moves this Court for an order approving

post-petition financing, authorizing Trustee to pay deposit to secured custodial surety bond, and

authorizing a carve out for unsecured creditors under the terms of a Pre-Sale Stipulation (the

Case: 20-40990    Doc# 80    Filed: 09/11/20    Entered: 09/11/20 12:52:56    Page 1 of 8

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

"**PSS**") between the Trustee and Wells Fargo Bank, National Association ("**WFB**," "**Wells Fargo Bank**" **or** "**Bank**"). This motion is brought under Bankruptcy Code sections 361, 363, 364(c), 503, and 507; rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("**FRBP**"); Rules 2002-1 and 9014-1 of the Bankruptcy Local Rules ("**BLR**"); and the United States Bankruptcy Court for the Northern District of California's Guidelines for Cash Collateral & Financing Motions & Stipulations (the "**Guidelines**").

## I. POST-PETITION FINANCING INTRODUCTORY STATEMENT[1]

### A. Purpose of the Financing.

Fairn & Swanson, Inc. ("**Debtor**") was engaged in the business of importing and selling duty-free alcohol merchandise, among other products, at border duty-free shops and to cruise lines. (Decl. Brady ¶ 2.)[2] It filed its petition for relief under Chapter 7 abruptly on June 2, 2020, after a "no-sail" order in the cruise line industry issued in March 2020 was extended indefinitely. (Decl. Brady ¶ 3.) At the time of filing it held inventory, mostly liquor and wine, in six warehouses and nine border stores across the country. (Decl. Brady ¶ 4.) In its Schedules, Debtor valued its inventory, based on in-bound cost, at $39,110,570.01. (Docket No. 1, Schedule A/B, p. 6, filed June 2, 2020). WFB holds a first position security interest in substantially all assets of the Debtor securing it prepetition claim for $19,081,233.82 (the "**WFB Claim**"). (Claim No. 31, filed July 8, 2020.)

The liquidation value of Debtor's inventory and other assets is yet to be determined but is affected by at least two unusual factors. (Decl. Brady ¶ 6.) First, much of the inventory is "in bond" merchandise, i.e. it is "duty-free," subject to numerous Customs and Border Protection ("**CBP**") restrictions, including the requirements that the proprietor maintain the merchandise in a foreign trade zone ("**FTZ**") or custom bonded warehouse ("**CBW**") and that any movement of the inventory out of the FTZ or CBW be conducted by bonded carriers—such that the inventory remains "in-bond" at all times while in the United States. (Decl. Brady ¶ 6.)

---

[1] This Post-Petition Financing Introductory Statement is provided in compliance with the Guidelines.

[2] All references to the Declaration of Lois I. Brady shall be referred to as (Decl. Brady ¶ ___).

002644.0031\59808512.2

MOTION

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

The second factor is the Covid-19 crisis, which resulted in a "no-sail" order of uncertain duration prohibiting cruise lines from operating. (Decl. Brady ¶ 6.) As cruise lines are the primary wholesale purchasers of Debtor's inventory, their no-sail status creates uncertainty in the timing of any future sales of the inventory. (Decl. Brady ¶ 6.)

These factors have caused delay in the marketing process and a dampening of the price, while the estate's carrying costs to preserve the inventory pending sale, including rent, insurance, security, utilities, and other preservation expenses, including professional expenses, is substantial, over $600,000.00 per month on an accrual basis as shown in the Budget (defined in the PSS) attached to the PSS. (Decl. Brady ¶ 7.)

On or about June 25, 2020, Trustee and Lender entered into a cash collateral stipulation (the "Cash Collateral Stipulation"), (Docket No. 17-1, pp. 2-171, filed June 26, 2020), that was approved by final order on July 23, 2020 (the "Final Order"). (Docket No. 59.) Funds recovered from post-petition collections of accounts receivable are insufficient to cover all of the estate's anticipated bonding requirements and carrying costs and post-petition financing is required to preserve the estate's assets pending sale.[3] (Decl. Brady ¶ 8.)

Of immediate concern is an obligation to post $500,000.00 as cash collateral to secure a FTZ custodial surety bond that is necessary to maintain CBP bonded inventory requirements. (Decl. Brady ¶ 9.) In particular, **the Debtor's current FTZ bond is through American Alternative Insurance Corporation ("AA") (the "Bond") and is set to expire September 20, 2020, at 11:59 p.m.** (Decl. Brady ¶ 9.) Prior to any renewal of the Bond, AA is requiring collateral in the form of a letter of credit in the amount of $500,000. (Decl. Brady ¶ 10.) Failure to renew the Bond can result in immediate confiscation of the merchandise by CBP. (Decl. Brady ¶ 10.) The Trustee is unable to provide a letter of credit to AA, and has therefore, sought to obtain a replacement bond in an equal amount, $500,000, from Argonaut Insurance Company ("Argonaut"). (Decl. Brady ¶ 10.) While Argonaut is similarly requiring collateral in the full

---

[3] Since her appointment on June 2, 2020, the Trustee has recovered over $1,200,000.00 in account receivable proceeds.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

amount of the bond, it is willing to accept a cash deposit.[4] (Decl. Brady ¶ 10.) The cost premium for the Argonaut bond is $12,500 and is fully earned.[5] (Decl. Brady ¶ 10.)

In addition to seeking approval for the proposed post-petition financing, this motion also requests an order authorizing the Trustee to execute a new custodian surety bond with Argonaut, which includes an indemnity provision limited to the funds transferred as collateral and authoring the trustee to transfer the $500,000.00 deposit  Argonaut from the Bank's cash collateral to serve as cash collateral for the Bond (the "Bond Payment") and further authorizing the Trustee to make such payment by regular check, cashiers' check or wire transfer.[6]

**B.      Summary of all Material Terms of Credit Agreement.**

The Pre-Sale Stipulation ("PSS") contains two elements. The first is a carve-out to unsecured creditors in the sum of $500,000.00 in the event the sale price is insufficient to pay WFB in full (the "Estate Carveout"). In addition to the post-petition financing and Bond Payment, this motion requests an order approving the Estate Carveout.

The "credit agreement" element of the PSS provides that WFB will loan up to $1,250,000.00 in new money to the Trustee to the extent that cash collateral is insufficient  to pay agreed-upon carrying costs, including professional expenses, pending sale of the assets.  The loan

---

[4] Under the Argonaut cash collateral program, the cash collateral for the bond is deposited with Texas Capital Bank, a federally insured institution.  Although Texas Capital is not recognized as an accepted Federally insured institution for deposit purposes by the  OUST Region 17 (ND California), it is recognized as an accepted Federally insured institution for deposit purposes by the OUST Region 6 (Texas) where the deposit is being made.   No fees are charged against the account and the account earns modest interest.  A true and correct copy of the Argonaut Indemnity Agreement for the bond, and Texas Capital Bank's Cash Collateral account information guide is attached as **Exhibit B**.

[5] Under the Argonaut Indemnity Agreement (Exhibit B), Argonaut will retain the collateral for approximately 1 year after the FTZ bond is terminated.  If the Trustee is unable to secure the Argonaut bond, the Trustee would have to deposit the $500,000 with CBP as a "cash in lieu of bond" ("CIB"), and under the CBP CIB program, the collateral is retained at a minimum of 6 to 7 years after cancellation of the FTZ bond.  Neither the estate nor WFB wish to have the collateral deposit tied up for that length of time.

[6] The Trustee is already authorized to use cash collateral to make the payment under the Cash Collateral Stipulation, but seeks additional authority because of the size of the payment and to authorize her to take the unusual actions of making the payment by cashiers' check or wire and executing the limited indemnity provision under the Argonaut Indemnity Agreement or as may be required by CPB.

Case: 20-40990     Doc# 80     Filed: 09/11/20     Entered: 09/11/20 12:52:56     Page 4 of 8

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

will bear interest at the same rate the WFB claim accruing interest (i.e., the default rate under the WFB credit agreement). It shall mature upon completion of the sale or upon a defined termination event. Given the circumstances and to save expenses, the parties have agreed not to require loan documentation beyond the PPS and an order from this court approving it.

The PPS also includes the following provisions which are discussed in the Required Disclosures section below: (1) WFB will be granted a limited super-priority administrative claim and post-petition lien on the estate's assets; however, both the claim and lien will be substantially limited to WFB's prepetition collateral, neither will apply to any unpaid agreed carrying costs, neither will attach to or be asserted against the estate's avoidance claims or the Estate Carveout; (2) WFB's prepetition claim for $19,081,233.82 will be deemed allowed; its security interests in the Debtor's assets will be deemed enforceable, duly perfected, and in first position; (3) any prepetition claims or avoidance claims that the Trustee may assert against WFB will be deemed waived or released; (4) the Trustee will waive any right to assert a surcharge claim under Bankruptcy Code section 506(c).

**C.    Copy of Credit Agreement**

A true and correct copy of the Pre-Sale Stipulation is attached as **Exhibit A**.

**D.    Certification**

The undersigned Certifying Professional has read the accompanying motion or stipulation and the Cash Collateral - Post Petition Financing Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion or stipulation are in conformity with the Court's Guidelines For Cash Collateral And Financing Motions and Stipulations except as set forth above. I understand and have advised the trustee that the court may grant appropriate relief under Rule 9024 of the Federal Rules of Bankruptcy Procedure if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statement.

**II.    REQUIRED DISCLOSURES**

Guideline section (C) requires that as to certain specified provisions in a credit agreement

or proposed order, the motion or stipulation shall describe the nature and extent of each provision, explain the reasons for such provision, and identify the specific location of the provision in the proposed form of order, agreement, stipulation or other document.

The four enumerated provisions in section (B) above require disclosure under section (C) of the Guideline. Their location, description and explanation are as follows.

[1]     The granting of a super-priority administrative claim and post-petition lien to secure claim resulting from advances. [PSS, ¶¶9.2]. As noted, both the priority claim and lien granted under the PSS are limited: they may not be asserted against agreed carrying cost claimants (Estate Payment items under the PSS), they may not be asserted against avoidance claim proceeds, and they may not be asserted against the Estate Carveout. In effect, with some possible small exceptions, they may only be asserted against WFB's own prepetition ncollateral - and consequently are innocuous.

[2]     WFB's prepetition claim for $19,081,233.82 will be deemed allowed; WFB's security interests in the Debtor's assets will be deemed enforceable, duly perfected, and in first position [PSS, ¶¶10.1 (1) and 10.2]. Trustee's counsel has fully analyzed WFB's claim and security interests and has determined that the agreed conclusions on allowance, perfection and priority are accurate and supported.

[3]     Any prepetition claims or avoidance claims that the Trustee may assert against WFB are acknowledged as non-existent. [PSS, ¶10.1(2), (3)]. The Trustee is not aware of any prepetition claims against WFB. Some may argue that WFB's tight controls on the Debtor forced it to file for bankruptcy relief, but even if such conduct may give rise to a claim it seems plain that Covid-19 and the financial disruption it caused in the cruise line and travel industry was the precipitating cause for the Debtor's bankruptcy filing. Trustee's counsel has carefully analyzed potential avoidance claims against WFB relating to millions of dollars it swept from the Debtor's accounts during the preference period and has concluded that such transfers are most likely not avoidable under prevailing Ninth Circuit law.

[4]     The Trustee will waive any right to assert a surcharge claim against the Bank under

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Case: 20-40990     Doc# 80     Filed: 09/11/20     Entered: 09/11/20 12:52:56     Page 6 of 8

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Bankruptcy Code Section 506(c). [PSS, ¶10.3]

This is a substantial waiver given that the Trustee's continuing preservation expenses are incurred primarily to preserve WFB's collateral. However, the waiver is expressly conditioned on all "Estate Payment" expenses being paid – and it is contemplated that such necessary expenditures will be paid from sale proceeds or the Trustee will either be unable or unwilling to complete the seller's post-sale delivery obligations, such that she believes that she has sufficient leverage to insure that necessary expenses she is otherwise entitled to surcharge will be paid by the Bank. In consideration of WFB's agreements to assure payment of such expenses (not all of which directly benefit WFB), the Trustee believes the surcharge waiver is a reasonable resolution.

## III. PROPOSED FORM OF ORDER

The proposed form of Order is attached hereto as **Exhibit C**.

## IV. CONCLUSION AND RELIEF REQUESTED

WHEREFORE, based on the foregoing, the Trustee respectfully requests that this Court enter an order:

1. Granting the Motion;

2. Approving and adopting the Pre-Sale Stipulation in its entirety as the Order of this Court and, therefore, binding on all parties in interest in this Case;

3. Finding that the Pre-Sale Stipulation (including, without limitation, the terms of the postpetition financing contained therein) was negotiated at arm's length and in good faith by the parties, and in the best interest of Debtor's estate and its creditors;

4. Approving the Estate Carveout of $500,000.00;

5. Authorizing the Trustee to execute the Argonaut Indemnity Agreement and to make the Bond Payment from the Bank's cash collateral by check, cashiers' check or wire transfer.

6. Directing that no stay shall apply to the effectiveness of the order;

7. For such other and further relief as the Court deems just and proper.

Case: 20-40990    Doc# 80    Filed: 09/11/20    Entered: 09/11/20 12:52:56    Page 7 of 8

DATED:  September 11, 2020                    WENDEL ROSEN LLP


                                              By:     _/s/ Mark S. Bostick_
                                                     Mark S. Bostick
                                                     Elizabeth Berke-Dreyfuss
                                                     Lisa Lenherr
                                                     Attorneys for Lois I. Brady, Trustee

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

002644.0031|59808851.2      MOTION                              8