# EXHIBIT A

Case: 20-40990   Doc# 80-1   Filed: 09/11/20   Entered: 09/11/20 12:52:56   Page 1 of 20

1 | Mark S. Bostick (Bar No. 111241)
Lisa Lenherr (Bar No. 258091)
2 | **WENDEL ROSEN LLP**
1111 Broadway, 24th Floor
3 | Oakland, California 94607-4036
Telephone: (510) 834-6600
4 | Fax: (510) 834-1928
Email: mbostick@wendel.com
5 | Email: llenherr@wendel.com
Attorneys for Lois I. Brady, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 20-40990-RLE |
| FAIRN & SWANSON, INC. | Chapter 7 |
| Debtor. | **PRE-SALE STIPULATION** |

LOIS I. BRADY, as Chapter 7 Trustee ("**Trustee**") of the above-captioned Fairn & Swanson, Inc. ("**Debtor**") bankruptcy estate, and WELLS FARGO BANK, NATIONAL ASSOCIATION or its successor or assigns ("**Lender**"), (collectively referred to as the "Parties"), stipulate as follows concerning the Trustee's future use of cash collateral and borrowing of postpetition loans from Lender (the "**Pre-Sale Stipulation**"):

**<u>RECITALS</u>**

A. On June 2, 2020 (the "**Petition Date**"), Debtor filed a voluntary petition (the "**Petition**") under Chapter 7 of the United States Bankruptcy Code.[1] (Docket No. 1.)

B. According to Debtor, on the Petition Date its assets, as defined by section 541 of

---

[1] 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

the Bankruptcy Code (property of the estate) (the "**Assets**"), had a value of $42,939,730.22. (Docket No. 1, p. 6, filed June 2, 2020 (Schedules).)

      C.      Lender asserts a claim in the amount of not less than $19,081,233.82, secured by substantially all of the Debtor's assets (the "**WFB Claim**"). (Claim No. 31, filed July 8, 2020.)

      D.      On or about June 25, 2020, Trustee and Lender entered into a stipulation (the "**Cash Collateral Stipulation**") for Trustee's use of cash collateral as that term is defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). (Docket No. 17-1, pp. 2-171, filed June 26, 2020.) A true and correct copy of the Cash Collateral Stipulation (without exhibits) is attached hereto as **Exhibit A.**

      E.      On July 23, 2020, the Court entered Final Order Granting Motion of Chapter 7 Trustee for Entry of Order: 1) Approving Cash Collateral Stipulation Pursuant to 11 U.S.C. § 363(b); and 2) Authorizing Trustee to Incur and Pay Certain Administrative Expenses (the "**Final Order**"). (Docket No. 59.) A true and correct copy of the Final Order is attached hereto as **Exhibit B**.

      F.      The Cash Collateral Stipulation provides for both a Professionals' Carveout[2] in an amount to be determined though approved budgets and subsequent budgets, and a Trustee's Carveout up to an amount of $100,000.

      G.      In addition, the Cash Collateral Stipulation provides that all budgeted items (the "**Administrative Expenses**") may be paid from Cash Collateral. The Administrative Expenses are described as follows:

      (a)      Post-Petition Rent;
      (b)      Security for all locations;
      (c)      Insurance for all locations and all estate assets;
      (d)      Warehouse expenses;
      (e)      Utilities;
      (f)      KIS IT Services;
      (g)      SAMCO Accounting Software;
      (h)      Non-Professional Assistance and associated Costs (including payroll taxes, payroll service or other)
      (i)      Other Misc. Expenses.

---

[2] Terms not defined herein shall have the meaning ascribed to them in the Cash Collateral Stipulation.

H. Through **August 31, 2020**, the known actual and unpaid expenses permitted to be paid from Cash Collateral pursuant to the terms of the Cash Collateral Stipulation are as follows (such known amounts, plus any additional amounts that were actually incurred by the Trustee during such period for Security, Insurance, Utilities and Payroll, are collectively referred to as the "**Pre-Stipulation Accruals**"):

| Accrued But Unpaid Expense | June 2-August 31, 2020 |
|---|---|
| Post-Petition Rent | 444,200 |
| Security | 2,517 |
| Insurance | |
| Warehouse Expenses | |
| Utilities | 44,295 |
| KIS IT Services | |
| SAMCO Accounting Software | 7,300 |
| Payroll | 23,546 |
| Other Misc. Expenses | 10,000 |
| Trustee's Counsel | 381,159 |
| Trustee's Accountant | 31,633 |
| Trustee Carveout | 100,000 |
| **Subtotal** | **$1,044,650** |
| **TOTAL JUNE -AUGUST** | |

I. Since the Petition Date, Trustee and Lender have diligently worked together to market Debtor's Assets for sale but have not yet received an offer for the Assets that is likely to repay the WFB Claim in full. However, Trustee and Lender have identified several potential purchasers for the Assets, and the Trustee anticipates filing a motion to approve a sale and related sale procedures in the immediate future.

J. The United States Department of Justice, U.S. Trustee Program, *Handbook for Chapter 7 Trustees* ("**Handbook**"), provides that trustees should not administer assets that will not "result in a meaningful distribution to creditors or would redound primarily to the benefit of the trustee and professionals." (Handbook, Ch. 8, § D (Abandonments).)

K. Notwithstanding the possibility of being undersecured, Lender desires Trustee's assistance in facilitating a sale of the Assets; in order to do so, Trustee requires the continued use of Cash Collateral and postpetition financing to preserve and liquidate the Assets for payment, among other things, of the WFB Claim. Further, the Parties have agreed to enter into this Stipulation in order to provide a meaningful distribution to unsecured creditors in an amount not less than $500,000.

L. The terms below have been negotiated at arm's length and in good faith.

M. Under the circumstances of this Case, the parties believe this stipulation is fair and reasonable and in the best interest of Debtor's estate and its creditors.

## STIPULATION

In consideration of the foregoing, the mutual promises, covenants, obligations, and agreements contained herein, and for other good and valuable consideration, the Parties agree as follows:

**1. Recitals Incorporated**. The foregoing recitals are true and correct and each such recital is incorporated herein.

**2. Bankruptcy Court Approval Required**. The effectiveness of this Stipulation is conditioned upon the Bankruptcy Court's entry of an order approving this Pre-Sale Stipulation that is mutually acceptable to each of the Parties (the "**Stipulation Order**").

**3. Sale of Assets**. The Parties agree to cooperate towards a prompt sale of substantially all of the Assets pursuant to section 363 of the Bankruptcy Code (a "**Sale**") to be approved by an order of the Bankruptcy Court that is mutually acceptable to each of the Parties (the "**Sale Order**"), with all proceeds of such Sale (the "**Proceeds**") to be distributed in accordance with the terms of this Stipulation and any Sale Order.

**4. Lender Consent to Payments to the Estate.** The liens of Lender shall be subject to the prior payment of the following, which shall be paid from Cash Collateral or the Proceeds, as applicable, in each case to the extent not otherwise paid with Postpetition Financing (collectively, the "**Estate Payment**"):

**4.1.** All Pre-Stipulation Accruals;

**4.2.** The Professionals' Carveout and Trustee's Carveout (defined in the Cash Collateral Stipulation), as amended by Section 5 below;

**4.3.** Solely from the Proceeds, a sum of five-hundred thousand dollars ($500,000) for distribution to holders of claims other than Lender (the "**Estate Carveout**"); and

**4.4.** All administrative expenses actually incurred by the Trustee on or after September 1, 2020, through and including the earliest "Termination Event" (defined in the Cash Collateral Stipulation, but as modified herein) to the extent contained in the Budget (defined below) (collectively, the "**Post-Stipulation Accruals**").

**5.** **Budget.** The "Budget" as defined in the Cash Collateral Stipulation, is hereby supplemented by the budget attached hereto as **Exhibit C** for the periods set forth therein and shall be further supplemented as required to complete a Sale and the sale performance obligations of Trustee.

**6.** **Time for Payment to Estate.** To the extent not paid pre-sale, Lender agrees that upon consummation of any Sale, the Estate Payment shall be paid to the estate first before any Proceeds are paid to Lender; provided, however, the Parties shall agree in the Sale Order upon an estimate of the amount of Post-Stipulation Accruals expected to be first incurred after entry of the Sale Order through the anticipated Termination Event (defined in the Cash Collateral Stipulation, but as modified herein) to occur due to completion of the Sale.

**7.** **Termination Events.** Paragraph 6 of the Cash Collateral Stipulation is hereby amended and restated in its entirety as follows:

**8.** **Termination Events.**

    a. Unless extended by agreement of the parties in writing, this Stipulation expires on the earliest occurrence of one of the following termination events (the "**Termination Events**"):

        i. October 31, 2020;

        ii. Trustee's failure to comply with the terms of this Stipulation or the Pre-Sale Stipulation filed in this Case and dated September 10, 2020 (the "**Pre-Sale**

**Stipulation**"); provided, however, that this shall not be a Termination Event until Lender first provides written notice of the failure to comply via email to mbostick@wendel.com and llenherr@wendel.com, and allows three (3) business days from the date of such notice to cure the non-compliance;

    iii. Trustee files a 11 U.S.C. § 363 sale motion proposing to sell the Pre-Petition Collateral (a "**Sale Motion**") on terms unacceptable to Lender, or Trustee does not file a Sale Motion and related motion to approve sale procedures that are acceptable to Lender on or before September 15, 2020 ;

    iv. Trustee does not obtain, on or before October 5, 2020, an order acceptable to Lender approving a sale of substantially all of Debtor's assets;

    v. Trustee files a motion to incur debt under 11 U.S.C. § 364 from a party other than Lender;

    vi. this Case is dismissed; or

    vii. if a Sale Order has been entered, on the date that substantially all obligations of Trustee under the purchase agreement approved by such Sale Order have been completed or waived; or

    viii. On or after the date hereof, Trustee commences a proceeding objecting to or challenging the extent, validity, perfection, enforceability or priority of the liens or claims alleged by Lender in this case.

b. Upon the occurrence of a Termination Event, Trustee's authorization to use Cash Collateral will automatically end and Trustee shall be prohibited from using Cash Collateral for any purpose other than paying amounts of the "Estate Payment" (as defined in the Pre-Sale Stipulation) that have accrued or have been committed to prior to such Termination Event.

c. The Stipulation and the Pre-Sale Stipulation, including updated Budget(s), may be extended by agreement of the parties in writing without further Court order.

9. **Lender Waiver of Lender Claim**. If the Assets sell for less than the amount of the WFB Claim plus the Postpetition Financing, Lender agrees that an amount of the WFB Claim

equal to the aggregate amount of Postpetition Financing will be junior and subordinate to all allowed general unsecured claims against the Debtor.

### 10. Postpetition Financing

10.1.    From time to time after the date hereof until the occurrence of a Termination Event (as defined in the Cash Collateral Stipulation and as amended hereby), Trustee hereby agrees to borrow from Lender on behalf of the estate, and Lender hereby agrees to advance to Trustee, postpetition loans to Trustee up to an aggregate principal amount of $1,250,000 to be used by the Trustee solely to pay amounts included in the Estate Payment (other than the Estate Carveout) as and when such amounts are due and payable by the Trustee and Cash Collateral is insufficient to pay such amounts (collectively, the "**Postpetition Advances**").  The Postpetition Advances shall bear interest at a rate equal to the default rate of interest under the Credit Agreement (as defined in the Cash Collateral Stipulation) . The Postpetition Advances and all interest thereon (collectively, the "**Postpetition Financing**") shall be due and payable upon a Termination Event (as defined in the Cash Collateral Stipulation and as amended hereby).

10.2.    Superpriority Administrative Expense Status; Postpetition Liens.  The Postpetition Financing is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that are incurred under any provision of the Code, other than the Estate Payment; provided, however, Lender may not assert such administrative expense claim against any claims or causes of action (or proceeds thereof) of the estate arising under any section of chapter 5 of the Bankruptcy Code (collectively, "**Avoidance Actions**") or against the Estate Carveout.  In addition, Lender is hereby granted liens on all property of the estate (other than any and all Avoidance Actions and the Estate Carveout) to secure the Postpetition Financing (the "**Postpetition Liens**").  Without any further action and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instrument, the Postpetition Liens:  (1) are in addition to Lender's prepetition liens; and (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), will be valid, perfected first-priority liens, but subject and junior to all existing, unavoidable liens on such assets.

**11. Adequate Protection of Lender's Prepetition Interests.** The Trustee and Lender have agreed to the following adequate protection of Lender's prepetition interests on account of Lender's consent and agreement to the terms of this Pre-Sale Stipulation (including, without limitation, regarding the Estate Payment).

    **11.1.** Priority of Prepetition Liens/Allowance of the WFB Claim. Subject to the terms of Paragraph 11.2 below, the Trustee stipulates and agrees that: (1) the WFB Claim constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of Lender's prepetition loan documents with Debtor; (2) no offsets, defenses or counterclaims to the WFB Claim exist, no portion of the WFB Claim is subject to avoidance, recharacterization or subordination, and Debtor holds no claims or causes of action against Lender; and (3) Lender holds valid, enforceable, first-priority liens or security interests in all assets described as "Collateral" in Debtor's prepetition loan documents with Lender (including all proceeds thereof, collectively, the "**Prepetition Collateral**").

    **11.2.** Review of Lender's Liens and Claims. The stipulations in Section 10.1 above shall be binding on all parties in interest in this Case, subject only to final determination of Lenders' interests concerning the issues alleged in the "Retention of Title Proceedings" (defined below), unless and solely to the extent that (i) a party in interest files a challenge to such stipulations on or before September 30, 2020, and (ii) the Court rules in favor of any such plaintiff in any such timely and properly filed challenge. If and to the extent that such a challenge is not timely filed and so determined against Lender (1) the claims, liens and security interests of Lender in the Prepetition Collateral shall be deemed to be allowed for all purposes and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise and (2) the stipulations and representations in Paragraph 11.1 above shall be binding on all parties in interest in this Case. For purposes of this Pre-Sale Stipulation, "Retention of Title Proceedings" shall mean that certain Adversary Proceeding No. 20-04034 commenced in this Case and any objections to the Sale that have been or may be brought after the date hereof alleging that a third party has retained title to any of the Assets.

**11.3.** <u>Surcharge Waiver.</u>  Except to the extent that Lender refuses to pay any portion of the Estate Payment that is determined to be due and payable or accrued in accordance with this Pre-Sale Stipulation, the Trustee (on behalf of Debtor's estate) waives any claim for surcharge pursuant to section 506(c) of the Bankruptcy Code, as well as any claim for an "equities of the case" exception under section 552(b) of the Bankruptcy Code.

**12.** **<u>Incorporation.</u>** This Stipulation modifies the Final Order, the Cash Collateral Stipulation, Budget, and subsequent budgets.

**13.** **<u>Miscellaneous</u>**.

**13.1.** <u>Captions</u>. Section and paragraph titles or captions contained herein are inserted as a matter of convenience and for reference purposes only, and in no way define, limit, extend or describe the scope of this Stipulation.

**13.2.** <u>Continuing Jurisdiction</u>. Any dispute related to this Stipulation shall be resolved by the Bankruptcy Court.

**13.3.** <u>Construction</u>.  The Parties acknowledge that each party and its counsel have reviewed and revised this Stipulation and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Stipulation or any amendment or exhibits hereto.

**13.4.** <u>Authority</u>. Each of the Parties represents that he or she is competent and has all necessary right, power, and authority to enter into and perform this Stipulation under all applicable laws.

**13.5.** <u>Counterparts</u>. This Stipulation may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.

**13.6.** <u>Further Assurances</u>. Debtor and Lender shall make, execute, and deliver such documents and undertake such other and further acts as may be reasonably necessary or appropriate to carry out the intent of the Parties hereto.

**IT IS SO AGREED:**

DATED: September 10, 2020

By: _____/s/ Lois I. Brady_____
Lois I. Brady, Trustee

DATED: September 10, 2020        Wells Fargo Bank, National Association

By: _____/s/ Gary Harrigian_____
By: Gary Harrigian
Its: Senior Vice President, Regional Portfolio Manager

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

002644.0031\5980743.1    STIPULATION

# EXHIBIT B



**ARGONAUT INSURANCE COMPANY**
INDEMNITY AGREEMENT-SHORT FORM A
COMMERCIAL SURETY

THIS AGREEMENT is made by the Undersigned (collectively referred to as "Indemnitors") in favor of the Surety (as hereinafter defined) for themselves, their personal representatives, heirs, successors and assigns, in connection with and in consideration for any Bonds for which Surety now is or hereafter becomes surety and hereby agree with, warrant and represent to, and bind themselves jointly and severally to Surety.

**DEFINITIONS:**
**BOND:** Any and all bonds, undertakings or instruments of guarantee, including prequalifications and bid bonds and any renewals, modifications or extensions thereof executed by Surety whether before or after the date of this Indemnity Agreement ("Agreement"). This includes Bonds written for Indemnitors, their subsidiaries and affiliates or for third parties at the request of Indemnitors.
**BONDED CONTRACT:** An agreement, contract or transaction to which any Indemnitor is a party and which is supported by a Bond issued by Surety.
**SURETY:** Argonaut Insurance Company, its subsidiaries, affiliates, parents, co-sureties, fronting companies and/or reinsurers and their successors and assigns, whether in existence now or formed hereafter and any other entity that issues a bond at the request of the Surety.
**INDEMNITY TO SURETY:** The Indemnitors agree to indemnify, exonerate and pay Surety upon demand:
1. All losses and expenses, including but not limited to attorneys' fees and other professionals' fees, incurred by Surety by reason of having executed or procuring the execution of any Bond, whether or not Surety has made payment or posted a reserve.
2. An amount sufficient to discharge any claim, loss or expense, whether actual or anticipated, against Surety on any Bond. This sum may be used by Surety to pay such claim, loss, expense or be held by Surety as collateral security against an actual or anticipated loss on any Bond.
3. Any premium due for any Bond, including renewal premiums, until Surety is furnished satisfactory proof of its discharge from liability under any Bond.

**GENERAL PROVISIONS:**
1. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be *prima facie* evidence of the fact and extent of the liability of the Indemnitors to Surety for any claim, loss or suit by Surety against the Indemnitors.
2. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar subsequent action by Surety.
3. Interest shall accrue on all amounts due Surety under any provision of this Agreement from the date Surety made demand at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.
4. Surety shall have the right to decline to execute, renew, modify or extend any Bond including final Bonds where the Surety has executed a bid bond. Such declination will not release or affect the obligations of the Indemnitors to Surety under this Agreement.
5. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right to exoneration. Indemnitors will, on request of Surety, procure the discharge of Surety from any Bond and any liability by reason thereof. If such discharge is unattainable, Indemnitors will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure, actual or potential, under such Bond(s), or make provisions acceptable to Surety for the funding of the bonded obligation(s) within 30 days of written demand or within any shorter period for payment required by the Bond terms. Indemnitors waive to the fullest extent possible their right to contest this provision. Indemnitors stipulate and agree that the Surety will not have an adequate remedy at law should Indemnitors fail to either obtain the release of the bonded obligations or to deposit collateral with Surety.
6. Surety shall not be obligated to release any collateral until it is provided with competent legal evidence of the discharge of the bonded obligation(s) and Surety shall not be required to pay interest on any collateral it holds. All collateral shall be cross-applicable to any bonded obligation(s).
7. .. Indemnitors hereby expressly authorize the Surety to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes, debt collection, or any information concerning Indemnitors in connection with the Surety's extension of surety credit and Indemnitors hereby release any of the aforementioned from liability in consequence of furnishing or disclosing such information.
8. Surety shall have the right and sole discretion to adjust, settle or compromise any claim, demand or suit upon any Bond.
9. The Indemnitors shall be in default of this Agreement if: (a) RESERVED; (b) Indemnitors make representations to the Surety by or on behalf of any of the Indemnitors that prove to have been misleading or materially false when made; (c) Indemnitors are convicted of any felony or (if an individual) die, abscond or disappear and/or (d) Indemnitors breach any other provision of this Agreement.
10. In the event of a default under a Bonded Contract, Indemnitors grant to Surety a security interest in all equipment, machinery, inventory, materials, and all proceeds and products in connection with any Bonded Contract. This Agreement shall for all purposes constitute a Security Agreement and Financing Statement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. In the event there is an act of default under any Bonded Contract, Indemnitors hereby irrevocably authorize Surety, without notice to any of the Indemnitors, to perfect the security interest granted herein by filing this Agreement or a copy or other reproduction of this Agreement. Surety may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement. The Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of the Surety's legal or equitable rights or remedies, including the Surety's right of subrogation.
11. Indemnitors warrant that they have a substantial, beneficial and material interest in the obtaining of each Bond by any Indemnitor and in the transaction(s) for which any Indemnitor has applied or will apply to the Surety for Bonds.
12. Indemnitors represent that they have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further represent and warrant that their execution, delivery and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority, or any other agreement binding upon Indemnitors.
13. Invalidity of any provision of this Agreement by reason of the laws of any state, or for any other reason, shall not render the other provisions hereof invalid.
14. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Texas, without giving effect to its choice of law principles.
15. This Agreement may be executed in multiple counterparts, and by the Indemnitors on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery. A duplicate or facsimile copy of the original of this Agreement shall have the same force and effect as the original.
16. The effective date of this Agreement is the first date any Indemnitor signs same and this Agreement is a continuing obligation of the Indemnitors until Surety is satisfactorily discharged from liability pursuant to the terms and conditions contained herein. No Indemnitor shall have the right to terminate its obligations for any Bond(s) issued during the term hereof.

Argo SF-GIA A 2016

Case: 20-40990   Doc# 80-1   Filed: 09/11/20   Entered: 09/11/20 12:52:56   Page 13 of 20

EXHIBIT B

*Page 1 of 2*

17. An Indemnitor may terminate participation in this Agreement only by sending Surety written notice of termination which notice shall be addressed to the Surety, to: Attn: Argo Surety, P.O. Box 469011, San Antonio, TX 78246. Sending by overnight delivery: 175 E. Houston Street, Suite 1300, San Antonio, TX 78246. Such name and address may be changed by written notice from the Surety. Such notice shall be delivered by certified mail, postage prepaid or by overnight delivery service such as Federal Express. The termination shall take effect thirty (30) days after Surety receives such notice ("Termination Date"). The notice shall not relieve the terminating Indemnitor from its obligations for (i) any Bond executed prior to the Termination Date, or (II) any Bond executed after the Termination Date which is a renewal or extension of a Bond issued prior to the Termination Date. The notice of termination shall in no way effect the obligation of any other Indemnitors who have not given such notice.
18. This Agreement is in addition to and not in lieu of any other agreement relating to the obligations described herein.
19. This Agreement pertains solely to Bonds written for Lois I. Brady as Trustee of the Chapter 7 Bankruptcy Estate of Fairn & Swanson and any replacement bonds issued by Surety.
20. Notwithstanding paragraphs 1, 2 and 3 above, the indemnity of Surety shall be limited to the collateral posted to secure this Bond(s). Any collateral posted with Surety shall be retained until the Surety is provided with competent written evidence of the release of all Bonds written pursuant to this Agreement.

---

**IF INDEMNITOR IS A CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP, SIGN BELOW:**

Instructions:
1. If the entity is: 1) a corporation, the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC, 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign.
2. Please provide the entity's federal tax identification number on the line provided.
3. **Two signatures are required for all entities** and **all signatures must be notarized and dated**.

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Lois I Brady, Trustee of the Chapter 7 Bankruptcy Estate of Fairn & Swanson

94-1120698

Indemnitor Name | Federal Tax ID #   Month/Date/Year

Signature of Authorized Official   Seal | Signature of Authorized Official   Seal

Lois I Brady, Trustee of the Chatper 7 Bankruptcy Estate of Fairn & Swanson

Print or Type Name and Title | Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF _____     County of _____
On this _____ day of _____, _____, before me personally appeared _____, known or proven to me to be the _____ of the entity executing the foregoing instrument ("Entity") and _____, known or proven to me to be the _____ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public residing at._____
(Commission expires_____)



**ARGO SURETY**
*Member Argo Group*

# ARGO SURETY CASH COLLATERAL PROGRAM

*Argo Surety offers clients the opportunity to collateralize surety bonds through a cash collateral program facilitated by Texas Capital Bank, N.A. The cash collateral program allows the client to maintain a pledged cash collateral account similar to the sample investment menu on the reverse of this page. The collateral account earns interest on this investment while the principal balance remains pledged to Argo Surety in support of the bond program.*

## HOW IT WORKS

- If the client would like to pursue a cash collateral program, the client should notify your Argo Surety underwriter via his/her surety broker.
- The underwriter will request that the client contact the Texas Capital Bank representative listed to the right and communicate a primary contact for the establishment of an account.
- Texas Capital Bank will contact the client's designated representative, send new account documentation, and review investment options.
- Texas Capital Bank will open an account and give the client account details and wiring instructions.
- After wired funds are received, Texas Capital Bank will execute the required documentation pledging the account to Argo Surety.
- Once the collateral account is established with all required documentation and the account is officially pledged to Argo Surety, bonds may be released.

## FAQs

Accounts Are Entitled to All Interest the Pledge Account Earns

Monthly Account Maintenence Fees Are Waived

Texas Capital Bank Requires a Minimum Account Balance of $100,000

All Funds Must Be Wired and the Required Documents Executed Properly Before Any Final Bonds Are Released

**Tray M. Mounce**
*Senior Vice President*
832.308.7091 office
713.416.2514 cell
**tray.mounce@texascapitalbank.com**

**Casi M. Jones**
*Banking Officer*
832.308.7066 office
**casi.jones@texascapitalbank.com**

Entrepreneur Banking
1330 Post Oak Blvd., Ste. 1600
Houston, Texas 77056



**TEXAS CAPITAL BANK**®
www.texascapitalbank.com

Member FDIC   NASDAQ®: TCBI

# TEXAS CAPITAL BANK INVESTMENT MENU

| Texas Capital Bank N.A., Deposit Rates | APY |
|---|---|
| Option 1 – $100,000 to $999,999 | 0.10% |
| Option 2 – $1,000,000 to $1,999,999 | 0.25% |
| Option 3 – $2,000,000 to $9,999,999 | 0.35% |
| Option 4 – $10,000,000 to $19,999,999 | 0.45% |
| Option 5 – $20,000,000 and Above | 0.60% |

*Rates are accurate as of May 15, 2020. Rates are for Commercial Accounts only and are subject to change without notice; all deposit products offered by Texas Capital Bank, N.A. Member FDIC. Interest accrued daily. Annual Percentage Yield (APY) represents the yield on a 365-day basis including the effect of compounding and interest reinvestment; APY on term deposits assumes reinvestment of principal and interest at maturity; interest paid on daily collected balance.*

 TEXAS CAPITAL BANK®

Texas Capital Bank is a commercial bank that delivers highly personalized financial services to businesses and entrepreneurs. We are headquartered in Texas working with clients throughout the state and across the country. Texas Capital Bank, N.A. is a wholly owned subsidiary of Texas Capital Bancshares, Inc. (NASDAQ: TCBI) and is recognized as a Forbes Best Banks in America and the Dallas Morning News' Top 100 Places To Work company. To find out why we're the Best Business Bank in Texas®, please visit **www.texascapitalbank.com.** Member FDIC

- Deposits placed at Texas Capital Bank will be insured by the FDIC up to the standard maximum deposit insurance amount of $250,000, for each deposit insurance ownership category.

- Texas Capital Bancshares, Inc. and its subsidiary Texas Capital Bank both have investment grade ratings from Standard & Poor's and Moody's.

- Money Market Funds within the Argo Surety Cash Collateral program require a minimum investment of $100,000.



*Member Argo Group*

www.texascapitalbank.com

Member FDIC   NASDAQ®: TCBI

# EXHIBIT C

```
 1  Mark S. Bostick (Bar No. 111241)
    Elizabeth Berke-Dreyfuss (Bar No. 114651)
 2  Lisa Lenherr (Bar No. 258091)
    **WENDEL ROSEN LLP**
 3  1111 Broadway, 24th Floor
    Oakland, California 94607-4036
 4  Telephone: (510) 834-6600
    Fax: (510) 834-1928
 5  Email: mbostick@wendel.com
    Email: edreyfuss@wendel.com
 6  Email: llenherr@wendel.com
    Attorneys for Lois I. Brady, Trustee
 7
 8
 9              UNITED STATES BANKRUPTCY COURT
10              NORTHERN DISTRICT OF CALIFORNIA
11                      OAKLAND DIVISION
12
```

| | |
|---|---|
| In re | Case No. 20-40990-RLE |
| FAIRN & SWANSON, INC. | Chapter 7 |
| Debtor. | **ORDER GRANTING MOTION FOR ORDER [1] APPROVING PRE-SALE STIPULATION, [2] AUTHORIZING CHAPTER 7 TRUSTEE TO INCUR POST-PETITION DEBT ON AN EMERGENCY BASIS, [3] AUTHORIZING CHAPTER 7 TRUSTEE TO EXECUTE AND PAY DEPOSIT TO SECURE CUSTODIAL SURETY BOND AND [4] APPROVING SECURED PARTY'S CARVE-OUT TO THE ESTATE** |
| | Date:  TBD<br>Time:  TBD<br>Place:  By video<br>Judge:  The Honorable Roger L. Efremsky |

Upon consideration of Trustee's Motion for Order (1) Approving pre-Sale Stipulation (the "PSS"), (2) Authorizing Chapter 7 Trustee to Incur Post-Petition Debt on an Emergency Basis, (3) Authorizing Chapter 7 Trustee to Pay Deposit to Secure Custodial Surety Bond and (4) Approving

002644.0031\5965688.2    ORDER

Secured Party's Carve-Out to the Estate, filed as Docket No. ___, on September ___ 2020, (the "Motion"), this Court having considered the Motion and the stipulation attached as Exhibit A to the Motion (the "Pre-Sale Stipulation") entered into by and among LOIS I. BRADY, as Chapter 7 Trustee ("Trustee") of the above-captioned Fairn & Swanson, Inc. ("Debtor") bankruptcy estate, and WELLS FARGO BANK, NATIONAL ASSOCIATION ("Lender" or "WFB"), and having completed an interim hearing on September ___, 2020, pursuant to 11 U.S.C. § 364 and Fed. R. Bankr. P. 4001(c) and (d), having reviewed the papers on file herein and being fully advised thereby, having found the notice good and property, there being no opposition, and for good cause:

**IT IS HEREBY ORDERED THAT:**

1) The Motion is granted on an interim basis pending a final hearing;

2) Pending a final hearing, the Pre-Sale Stipulation, as defined in the Motion, is approved and adopted in its entirety as the Order of this Court, binding on all parties in interest in this case;

3) Trustee is authorized to obtain post-petition financing under the terms described in the Stipulation with $500,000 to be obtained immediately to avoid immediate and irreparable harm to the estate pending a final hearing;

4) Trustee is authorized to execute the Argonaut Indemnity Agreement and to make the Bond Payment from the Bank's cash collateral by check, cashiers' check or wire transfer;

5) The Pre-Sale Stipulation (including, without limitation, the terms of the postpetition financing contained therein) was negotiated at arm's length and in good faith by the parties, and in the best interest of Debtor's estate and its creditors;

6) The Estate Carveout (as defined in the Motion) is approved;

7) This Court shall retain sole and exclusive jurisdiction to hear and determine any and all disputes or controversies arising from or related to the implementation, interpretation, or enforcement of the Stipulation or this order;

8) No stay shall apply to the effectiveness of the order; and

**9)** A final hearing shall be heard on **September 30, 2020, at 2:00 p.m.**

002644.0031\5965688.2    ORDER    2

APPROVED AS TO FORM:

PILLSBURY WINTHROP SHAW PITTMAN LLP


*By:  /s/ Jonathan Doolittle*
    Jonathan Doolittle
    Attorneys for Wells Fargo Bank, National Association


**\*\*END OF ORDER\*\***