Lea Pauley Goff (Kentucky SBN 81266)
(pending *pro hac vice* admission)
Spencer K. Gray (Kentucky SBN 98069)
(pending *pro hac vice* admission)
STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, KY 40202-2828
Telephone:  502.333.6000
Facsimile:  502.333.6099
Email:  lea.goff@skofirm.com
Email:  spencer.gray@skofirm.com

Cecily A. Dumas (SBN 111449)
David J. Richardson (SBN 168592)
BAKER & HOSTETLER LLP
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:  415.659.2600
Facsimile:  415.659.2601
Email:  cdumas@bakerlaw.com
Email:  drichardson@bakerlaw.com

*Counsel for Brown-Forman Corporation*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| **In re:** | Case No. 4:20-bk-40990-RLE |
| **FAIRN & SWANSON, INC.,** | Chapter 7 |
| **Debtor** | **BROWN-FORMAN'S OBJECTION TO TRUSTEE'S MOTION FOR ORDER APPROVING PRE-SALE STIPULATION, AUTHORIZING CHAPTER 7 TRUSTEE TO INCUR POST-PETITION DEBT ON AN EMERGENCY BASIS, AUTHORIZING CHAPTER 7 TRUSTEE TO PAY DEPOSIT TO SECURE CUSTODIAL SURETY BOND, AND APPROVING SECURED PARTY'S CARVE-OUT TO THE ESTATE** |

# I.

# INTRODUCTION

Creditor Brown-Forman Corporation, dba Brown-Forman Beverages Worldwide ("Brown-Forman") hereby objects to that *Motion For Order [1] Approving Pre-Sale Stipulation, [2] Authorizing Chapter 7 Trustee To Incur Post-Petition Debt On An Emergency Basis, [3] Authorizing Chapter 7 Trustee To Pay Deposit To Secure Custodial Surety Bond And [4] Approving Secured Party's Carve-Out To The Estate* (the "Motion") (Doc. No. 80) filed by the Trustee for the reasons stated below. The Trustee for an apparently insolvent estate seeks an emergency $500,000 loan from the secured creditor in order to keep a bonding status that she apparently needs to sell the estate's alcohol assets on which that secured creditor claims a first lien position. In exchange for these funds, she proposes that the estate get a $500,000 carve-out from the lien, but that the secured creditor get allowance of its $20 million claim, a determination that it is in a secured first priority position, a waiver of surcharge, and a waiver of any claims against it. However, there is no evidence that the sale process she claims is ongoing, and for which she needs to maintain the bonding, will generate benefit for any creditor except the secured creditor. If the sale benefits only the secured creditor, then that secured creditor should be assessed all of the estate's carrying costs as a surcharge, or perhaps it should liquidate its collateral under Article Nine. If there is actual benefit to unsecured creditors from the deal the Trustee proposes, she should be required to disclose to the creditors what that is.

# II.

# BACKGROUND

1. Fairn & Swanson, Inc. ("Debtor") was engaged in the business of importing and selling duty-free alcohol merchandise and other products to cruise lines. Debtor filed its petition for relief under Chapter 7 on June 2020. In its Schedules, Debtor valued its inventory at $39,110,570.01. (Doc. No. 1, Schedule A/B, p. 6).

2. Wells Fargo Bank, National Association ("Wells Fargo") claims to hold a first position security interest in substantially all of Debtor's assets securing its prepetition debt in the amount of $19,081,233.82. (Claim No. 31, filed July 8, 2020).

3. Brown-Forman is a manufacturer of branded adult beverage products with brands including Jack Daniels, Woodford Reserve, Sonoma Cutrer wines, and many others. Before the Debtor filed for bankruptcy, Brown-Forman sold large quantities of product to the Debtor. The Debtor owes $910,828.37 to Brown-Forman for product delivered prepetition. (Claim No. 72, filed August 4, 2020).

4. On July 7, 2020, the Trustee held a § 341 creditor meeting. During the meeting, it was announced that the Trustee was in the process of selling the Debtor's assets but did not provide any specific details regarding the proposed sale. Following the creditor meeting and continuing throughout these proceedings, the Trustee has regularly alluded to an impending sale without elaborating on the details of the supposed sale. To date, no document has been filed with the Court providing the details of a proposed sale and the unsecured creditors, including Brown-Forman, lack information about what the Trustee has been doing regarding sale efforts for the past two months..[1]

5. The Trustee filed its Motion on September 11, 2020, seeking "an order approving post-petition financing, authorizing Trustee to pay deposit to secured custodial surety bond, and authorizing a carve out for unsecured creditors under the terms of a Pre-Sale Stipulation . . . between the Trustee and [Wells Fargo]." (Doc. No. 80 at p. 1 – 2). That same day, the Trustee filed that *Ex Parte Application For Order Shortening Time And Limiting Notice Of Hearing On Motion For Order [1] Approving Pre-Sale Stipulation, [2] Authorizing Chapter 7 Trustee To Incur Post-Petition Debt On An Emergency Basis, [3] Authorizing Chapter 7 Trustee To Pay Deposit To Secure Custodial Surety Bond And [4] Approving Secured Party's Carve-Out To The Estate* (the "<u>Limited Notice Application</u>") (Doc. No. 81). The Court granted the Limited Notice Application on September 14, 2020 and scheduled an interim hearing regarding the Motion to be held on September 16, 2020 at 2:00 p.m., just three business days after the Trustee filed the Motion.

///

///

///

---

[1] Brown-Forman's counsel tried to obtain information regarding the sale directly from the Trustee, but has been unable to obtain such information informally.

## III.

## DISCUSSION

**A.     The Creditors Have Too Little Information to Evaluate the Trustee's Proposal**

Brown-Forman objects to the Motion because it lacks sufficient information to assess whether a $500,000 carve-out is a fair deal in exchange for the substantial concessions proposed to be made by the estate. The Motion seeks Court approval of the Pre-Sale Stipulation, post-petition financing, authorization to post $500,000 as cash collateral to secure a custodial surety bond, and authorization of a $500,000 carve-out for unsecured creditors under the terms of the Pre-Sale Stipulation. In exchange, the Trustee proposes that the estate make the following concessions: (1) the granting to Wells Fargo of a super-priority administrative claim and post-petition lien to secure claim resulting from advances; (2) providing that Wells Fargo's prepetition claim for $19,081,233.82 will be deemed allowed, and its security interests in the Debtor's assets will be deemed enforceable, duly perfected, and in first position of priority; (3) waiver of any prepetition claims or avoidance claims that the Trustee may assert against Wells Fargo; and (4) waiving any right to assert a surcharge claim against Wells Fargo.

**B.     Creditors Need Information Regarding the Likely Sale Value of the Inventory in Order to Determine Whether the Sale Which the Trustee's Proposal Purports to Enable Benefits any Creditor Except Wells Fargo.**

Brown-Forman lacks critical information necessary to evaluate whether a $500,000 carve-out is worth all of these concessions. First, Brown-Forman—indeed, all creditors—has no information regarding the anticipated sale price of the inventory. Based on her representations regarding the progress of the sale process, the Trustee must know or at least have a good estimate of what the estate property will sell for. But the Trustee has not disclosed this information to Brown-Forman or, presumably the other unsecured creditors. By its own terms, the carve-out is only effective if the sale price is insufficient to pay Wells Fargo in full. (Motion, Doc. No. 80, at p. 4). Absent knowledge of the sale price or the level of interest the Trustee has received in marketing the property, Brown-Forman does not know if the carve-out will even be effective.

Second, Brown-Forman has no information regarding the sale process itself. Without this information, Brown-Forman does not know whether the Trustee has done her due diligence in marketing the estate property to realize its maximum value. Before consenting to the significant concessions proposed by the Trustee, Brown-Forman at least deserves to know that the Trustee has appropriately marketed the estate assets.

### C. The Creditors Need Information Regarding the Trustee's Analysis of Wells Fargo's Position in Order to Make a Judgment About Whether Wells Fargo Should Get a Release and an Allowed Claim

Brown-Forman lacks information sufficient to determine whether the Trustee has done her due diligence in confirming perfection of Wells Fargo's lien. Nor does Brown-Forman have information sufficient to evaluate whether the Trustee's waiver of prepetition or avoidance claims is reasonable. The Motion provides that "Trustee's counsel has carefully analyzed potential avoidance claims against [Wells Fargo] relating to <u>millions of dollars</u> it swept from the Debtor's accounts during the preference period and has concluded that such transfers are most likely not avoidable under prevailing Ninth Circuit law." (Motion, Doc. No. 80 at 6) (emphasis added). But this bare legal conclusion does not provide Brown-Forman with the appropriate assurances to support waiving these potentially "millions of dollars" in claims in exchange for a potential carve-out. Also, any allowance of the claim by the Trustee should not preclude other creditors from challenging the claim and its lien — or they should be given a reasonable period of time in which to do so.

### D. A Surcharge Waiver is Inappropriate if the Anticipated Sale Benefits Only Wells Fargo.

Based on what little information is provided in the Motion, it appears that the estate may be administratively insolvent and it is unclear whether the unsecured creditors will get anything if a sale is completed. Considering the $600,000 per month carrying costs (Motion, Doc. No. 80, p. 3) and the nature of relief requested in the Motion, it may be unlikely that the sale of estate property will create any value for Brown-Forman or the other unsecured creditors. This makes the surcharge waiver highly suspect as it appears the Trustee's sale efforts are primarily, or perhaps entirely, for

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the benefit of the secured party. "[G]enerally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors." *DeGiacomo v. Traverse (In re Traverse)*, 753 F.3d 19, 25 n. 2 (1st Cir. 2014) (quoting U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8-20 (2009) (quotation marks omitted). *See also* Collier on Bankruptcy ¶ 725.01 ("It is not the proper function of the trustee to liquidate property solely for the benefit of secured creditors.").

In *In re KVN Corp.*, 514 B.R. 1 (9th Cir. BAP 2014), the BAP considered a similar agreement between a trustee and secured creditor, with a limited carve-out for unsecured creditors, and explained:

> It is universally recognized, however, that the sale of a fully encumbered asset is generally prohibited. [citations omitted]. The prohibition against the sale of fully encumbered property is also embedded in the official Handbook for Chapter 7 Trustees in several places:
>
>> Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest.
>
> U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees at 4-16 (2012) (hereinafter, Handbook). The Handbook also provides:
>
>> A chapter 7 case must be administered to maximize and expedite dividends to creditors. A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.
>
> *Id*. at 4-1. Finally,
>
>> [i]n asset cases, when the property is fully encumbered and of nominal value to the estate, the trustee must immediately abandon the asset and contact the secured creditor immediately so that the secured creditor can obtain insurance or otherwise protect its own interest in the property. [§§] 554, 704.
>
> *Id*. at 4-7. Taken together, the above-referenced authorities stand for the proposition that sales of fully encumbered assets are generally improper. In that instance, the trustee's proper function is to abandon the property, not administer it, because the sale would yield no benefit to unsecured creditors.

*In re KVN Corp.*, 514 B.R. at 5-6.

Case: 20-40990    Doc# 89    Filed: 09/15/20    Entered: 09/15/20 17:50:04    Page 6 of 8

The BAP went on to consider whether the carve-out could justify the sale, noting that such carve-outs must provide unsecured creditors with a "meaningful" recovery:

> The Handbook also provides some guidance on carve-out agreements in the context of a sale:
>
>> A trustee may sell assets only if the sale will result in a meaningful distribution to creditors. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset and whether the value of the asset exceeds the liens. The trustee may seek a 'carve-out' from a secured creditor and sell the property at issue if the 'carve-out' will result in a meaningful distribution to creditors. . . . If the sale will not result in a meaningful distribution to creditors, the trustee must abandon the asset.
>
> Handbook at 4-14.

*In re KVN Corp.*, 514 B.R. at 7.

The BAP then noted the need for "heightened scrutiny due to past abuses" (*id.*), and held that in order to overcome the presumption of impropriety to the motion, the trustee needed to satisfy certain requirements:

> To rebut the presumption, the case law directs the following inquiry: Has the trustee fulfilled his or her basic duties? Is there a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors? Have the terms of the carve-out agreement been fully disclosed to the bankruptcy court? If the answer to these questions is in the affirmative, then the presumption of impropriety can be overcome.

*Id*. at 8. The BAP considered the test, and concluded that the trustee did not appear to be conducting the sale for her own benefit, but remanded for the Bankruptcy Court to determine the "question of fact" whether the carveout "from the lien proceeds will result in a meaningful distribution to the unsecured creditors." *Id*.

The *KVN* opinion demonstrates what is missing from the Motion. The Trustee has not presented evidence of the validity of Wells Fargo's lien, nor facts to demonstrate that the carve-out is certain, and will provide a meaningful distribution to creditors. If such information cannot be presented, then the only appropriate outcome is for this case to be deemed administratively insolvent, and the assets to be turned over to Wells Fargo (assuming their lien is valid). If the bonding is necessary to sell the assets and that sale is likely to benefit only Wells Fargo, then Wells Fargo can advance funds to cover it as lenders commonly do to protect their collateral.

**E.     The Trustee's Proposal Should Not Be Heard on an Emergency Basis.**

Finally, the Motion does not adequately explain why it is necessary for these substantial concessions to be made upon such short notice. There is no reason why the rights of creditors to object to these significant concessions are to be adjudicated on just three business days' notice. The Trustee identifies that the current bond on the estate property is set to expire September 20, 2020. But the Trustee fails to explain why she waited until September 11, 2020 to bring this to the attention of the creditors when she surely knew of this deadline far in advance of filing the Motion and Limited Notice Application. This artificially hurried timetable in which creditors must object to significant estate concessions upon limited information raises concerns regarding the propriety of the Motion and the Trustee's efforts at marketing the estate assets. Due Process and transparency are at the heart of bankruptcy proceedings. Both are absent here.

## IV.

## CONCLUSION

For the foregoing reasons, Brown-Forman objects to the Motion. The Court should deny the Motion without prejudice to the Trustee's ability to file it again with different terms, more information and on adequate notice to creditors.

Respectfully submitted,

STOLL KEENON OGDEN PLLC
Lea Pauley Goff
Spencer K. Gray

*Counsel for Brown-Forman Corporation*

BAKER & HOSTETLER LLP

By: */s/ David J. Richardson*
    Cecily A. Dumas
    David J. Richardson

*Counsel for Brown-Forman Corporation*